UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

REPORT AND RECOMMENDATION

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Equal Employment Opportunity
Commission,

        Plaintiff,

  vs.

Independent School District No.
2174 of Pine River, Minnesota,

        Defendant and Third-
         Party Plaintiff,

  vs.

Education Minnesota and Pine River-
Backus Educational Association,

        Third-Party
        Defendant.         Civ. No. 04-4087 (RHK/RLE)

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Equal Employment Opportunity
Commission,

        Plaintiff,

vs.

Independent School District No.
75 of St. Clair, Minnesota,

       Defendant and Third-
        Party Plaintiff,

   vs.

Education Minnesota and Education
Minnesota-St. Clair a/k/a St. Clair
Educational Association,

       Third-Party
        Defendant.            Civ. No. 04-4088 (RHK/RLE)

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Equal Employment Opportunity
Commission,

       Plaintiff,

   vs.

Independent School District No.
271 of Bloomington, Minnesota,

       Defendant and Third-
        Party Plaintiff,

   vs.

- 2 -

Education Minnesota and Bloomington
Federation of Teachers,

               Third-Party
                Defendant.              Civ. No. 04-4090 (RHK/RLE)

    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Equal Employment Opportunity
Commission,

               Plaintiff,

    vs.

Independent School District No.
756 of Blooming Prairie, Minnesota,

               Defendant and Third-
                Party Plaintiff,

    vs.

Education Minnesota and Blooming
Prairie Teacher's Association,

               Third-Party
                Defendant.              Civ. No. 04-4091 (RHK/RLE)

    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Equal Employment Opportunity
Commission,

               Plaintiff,

vs.

Independent School District No.
761 of Owatonna, Minnesota,

        Defendant and Third-
        Party Plaintiff,

vs.

Education Minnesota and Owatonna
Education Association,

        Third-Party
        Defendant.           Civ. No. 04-4092 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Equal Employment Opportunity
Commission,

        Plaintiff,

vs.

Independent School District No.
857 of Lewiston, Minnesota,

        Defendant and Third-
        Party Plaintiff,

vs.

- 4 -

Education Minnesota and Education
Minnesota of Lewiston-Altura,

                    Third-Party
                    Defendant.                    Civ. No. 04-4093 (RHK/RLE)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motions of the Plaintiff Equal Employment Opportunity Commission ("EEOC") for Partial Summary Judgment, the Motions of the Defendants/Third-Party Plaintiffs ("School Districts") for Summary Judgment, and the Motions of the Third-Party Defendants ("Education Associations") to Dismiss or, in the alternative, for Summary Judgment. A Hearing on the Motions was conducted on April 14, 2005, at which time, the EEOC appeared by Laurie A. Vasichek, EEOC Senior Trial Attorney; the School Districts appeared by Mark R. Azman and Gabriel A. Kuhfuss, Esqs.; and the Education Associations appeared by Harley M. Ogata, Esq.

For reasons which follow, we recommend that the Motions of the School Districts for Summary Judgment be denied, that the EEOC's Motions for Partial

Summary Judgment be granted, and that the Educational Associations' Motions to Dismiss or, in the alternative, for Summary Judgment, be granted.

## II.  Factual Background

The EEOC commenced lawsuits against ten individual school districts, which are located within the State of Minnesota, alleging violations of the Age Discrimination in Employment Act ("ADEA"), based upon early retirement incentive plans ("ERIP"), that are contained in those School Districts' collective bargaining agreements ("CBAs").  These six cases have been determined to be related for Pretrial purposes, and therefore, certain of the issues presented are jointly addressed.

In response to the EEOC's lawsuits, the six School Districts filed Third-Party Complaints against the Education Associations that relate to each of the named School Districts.  The Third-Party Complaints contend that the Education Associations, as participants in the negotiation of the CBAs at issue, are obligated, under principles of contribution and/or indemnity, to share in the payment of any damages if the pertinent CBA is found to violate the ADEA.

Three sets of dispositive Motions currently pend before the Court.  The School Districts filed Motions for Summary Judgment, in which they challenge the constitutionality of the ADEA under the Commerce Clause.  The EEOC has also

moved for partial Summary Judgment, but has limited its Motion to the liability of the

Defendant Pine River-Backus School District ("Pine River District"), under the ADEA.

In turn, the Education Associations have filed Motions to Dismiss or, in the alternative,

for Summary Judgment, in which they contend that the School Districts do not have

a right to contribution, and/or indemnity, under the ADEA.

III.  Discussion

A.    The School Districts' Motions for Summary Judgment.

1.    Standard of Review.  Summary Judgment is not an acceptable

means of resolving triable issues, nor is it a disfavored procedural shortcut when there

are no issues which require the unique proficiencies of a Jury in weighing the evidence,

and in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S.

317, 327 (1986).  Summary Judgment is appropriate when we have viewed the facts,

and the inferences drawn therefrom, in a light most favorable to the nonmoving party,

and we have found no triable issues.  See, Luigino's, Inc. v. Peterson, 307 F.3d 909,

911 (8th Cir. 2003); Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002);

Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson

Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000).

For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the non-moving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026, 1028 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jaurequi v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

2.    Legal Analysis.    Here, the School Districts challenge the constitutionality of the ADEA, as an exercise of Congress's authority under the Commerce Clause.  In so doing, they have directly challenged the continued viability of  EEOC v. Wyoming, 460 U.S. 226, 243 (1983), which expressly held that "the extension of the ADEA to cover state and local governments * * * was a valid exercise of Congress's powers under the Commerce Clause."

The School Districts contend that developments in Commerce Clause jurisprudence, following the Supreme Court's decisions in United States v. Lopez, 514 U.S. 549 (1995), and United States v. Morrision, 529 U.S. 598 (2000), impliedly overruled the holding in Wyoming, and therefore, they urge us to conduct an

independent review of Congress's authority to enact the ADEA, under Commerce Clause.  The School Districts maintain that a review of the ADEA, under the standards articulated in Lopez and Morrison, reveals that the ADEA exceeds Congress's authority under the Commerce Clause, and therefore, the ADEA is unconstitutional. In support of that argument, the School Districts rely on the absence of specific Congressional findings, which were analyzed by the Court in Kimel v. Florida Board of Regents, 528 U.S. 62, 89-91 (2000).

The School Districts have failed to identify any Supreme Court precedent that either expressly overrules the holding in Wyoming, or casts the holding, in Wyoming, into doubt.  As a consequence, we are bound by Wyoming, and are precluded from issuing a decision that directly contravenes that Supreme Court precedent.  See, Agnostini v. Felton, 521 U.S. 203, 237 (1997) ("If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions."); see also, United States v. Kornwolf, 276 F.3d 1014, 1015 (8th Cir. 2002); Okrulhik v. University of Arkansas ex rel May, 255 F.3d 615, 622 (8th Cir. 2001).

As a result, we concur with the Court, in <u>Hornfield v. City of North Miami Beach</u>, 107 F. Supp.2d 1359, 1364 (S.D. Fla. 2000), which addressed paralleling arguments as follows:

> [I]t is the duty of the court to follow existing Supreme Court precedent, absent almost certain abrogation by later Supreme Court decisions or statutory changes.  In this case, the court's decision is not difficult; the Supreme Court acknowledged in Kimel that the EEOC v. Wyoming decision controls for the proposition that the ADEA is valid legislation under the Commerce Clause.  Absent further direction from the Supreme Court, the ADEA must be enforced against private and public actors.  The only limitation is on suits by private individuals against the state in federal court where the state has not waived its sovereign immunity.

See also, <u>EEOC v. Kentucky Retirement Systems</u>, 16 Fed. Appx. 443, 2001 WL 897433 (6th Cir., August 2, 2001).

Further, contrary to the School Districts' argument, nothing in the Supreme Court's more recent precedents so much as suggests that the holding, in <u>Wyoming</u>, is no longer the governing law.

Quite to the contrary, in <u>Kimel</u>, the Supreme Court cited the holding in <u>Wyoming</u> for the proposition that the ADEA was enacted pursuant to Congress's powers under the Commerce Clause.  <u>Kimel v. Florida Board of Regents</u>, supra at 78. However, the Court was required to reach the issue of the validity of the ADEA under

Section 5 of the Fourteenth Amendment, since the case involved a suit by a private individual, against a State entity, thereby implicating the States' Eleventh Amendment sovereign immunity.  Id., see also, Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72-73 (1996)(holding that Congress cannot abrogate States' sovereign immunity using its Article I powers).   Here, since the pending suits were initiated by the EEOC, sovereign immunity is not an issue, and the Courts analysis, in Kimel, cannot be read to abrogate the holding in Wyoming.  See, State Police for Automatic Retirement Association v. DiFava, 317 F.3d 6, 11 (1st Cir. 2003)("The Kimel Court reiterated the Supreme Court's earlier holding in Wyoming, * * * that the ADEA constitutes a valid exercise of Congress's power under Article I, [Section] 8, cl. 3 'to regulate Commerce * * *among the several States.'").

Since  Wyoming remains binding precedent, to which we have found no contrary Supreme Court ruling, we conclude that the ADEA is a valid exercise of Congress's authority under the Commerce Clause.  Accordingly, we recommend that the School Districts' Motions for Summary Judgment be denied.

B.   The EEOC's Motion for Partial Summary Judgment.

The EEOC's Motion for Partial Summary Judgment is limited to the issue of liability, as to the Pine River District, and does not implicate the other School

Districts in the related cases.  As to the Pine River District, the EEOC has alleged that

the ERIP that is contained in the 1999-2001 CBA was facially violative of the ADEA.

The ERIP provided a cash incentive for retiring full-time teachers, who had over fifteen

(15) years of service, and who were at least fifty-two (52) years old.  The incentive

was calculated as five (5) days' pay for each year of service up to a maximum of

seventy-five (75) days, plus twenty-five (25) per cent pay for unused leave.  However,

the percentage of that total amount, which was actually received by the retiree, varied

depending on his or her age, such that a teacher who retired between the ages of fifty-

two (52) and fifty-eight (58), received one hundred (100) per cent of the benefit, while

a teacher who retired at the age of fifty-nine (59) received ninety (90) per cent of the

benefit, at sixty (60), the benefit was reduced to eighty (80) per cent, at sixty-one (61)

the benefit was reduced to seventy (70) per cent, at sixty-two (62), the benefit was

reduced to sixty (60) per cent, at sixty-three (63), the benefit was reduced to fifty (50)

per cent, at sixty-four (64), the benefit was reduced to forty (40) per cent, at sixty-five

(65), the benefit was reduced to thirty (30) per cent, and a teacher who retired at the

age of sixty-six (66)  received no benefit under the ERIP.  Declaration of Laurie

Vasichek ("Vasichek Aff."), Exh. 1 at pp. 10-11.

During the summer of 2000, two retiring teachers from the Pine River District filed ADEA claims with the EEOC.  Both teachers, who were sixty-one (61) and sixty-two (62) years of age, respectively, alleged that the Pine River District, acting pursuant to the ERIP, had discriminated against them based on their age, by denying them the full benefit that they would have received had they retired between the ages of fifty-two (52), and fifty-eight (58).  Id., at Exhs. 3 and 4.  Based on those complaints, the EEOC issued a probable cause determination that the ERIP violated the ADEA, and notified the Pine River District of that determination on October 6, 2000, and January 10, 2001.  Id., at Exhs. 4 and 5.   The notifications also contained proposed Conciliation Agreements, in which the EEOC agreed not to bring suit against the Pine River District, if the District agreed to cease the ERIP's discriminatory practice, to compensate all employees, who were affected by the ERIP, by the amount of money that had been lost as a result of the declining scale benefit,[1] and to conspicuously post a "Notice," which informed the employees of the Pine River District about the Conciliation Agreement.  Id., at Exhs. 6 and 7.  The Pine River District responded by transmitting a letter to the EEOC, which detailed its efforts to draft language that would

---

[1]The compensation provision was limited to those employees who were affected within a two-year period from the filing of the charges.

- 14 -

replace the ERIP, but also stated "[t]he School District recognizes that this letter is not an agreement to each of the terms of the EEOC's initial conciliation proposal; it does, however, constitute an unequivocal willingness to seek conciliation of the charges." Id. at Exh. 8.

Shortly after its receipt of the letter from the Pine River District, an investigator with the EEOC communicated to the Pine River District that the two individual charges could be resolved with payments to the individual charging parties, by a change in the language of the ERIP, and by the payment of one hundred (100) percent of the retirement benefits to all persons who retired prior to the change in the ERIP. Declaration of Pamela Bloomer, at ¶2.  In a subsequent response, the Pine River District informed the EEOC that it would not be resolving the individual claims, but was working towards a class resolution.  Id. at ¶3.  Then, approximately three (3) weeks after receiving the initial response from the Pine River District, the EEOC informed the District that it had determined that the efforts to conciliate the charge were unsuccessful, that it would make no further efforts towards conciliation, and that it was forwarding the case for possible litigation.  Vasichek Decl., at Exh. 10.  The Complaint against the Pine River District was filed on September 13, 2004.

On the question of whether the School District's ERIP violated the ADEA, the issues are materially indistinguishable from those presented in Overlie v. Owatonna Independent School District No. 761, 341 F. Supp.2d 1081(D. Minn. 2004).   In Overlie, the defendant school district's CBA contained an ERIP that decreased the number of days' worth of compensation, which a retiring teacher could receive by the teacher's age, if the teacher was over the age of fifty-five (55).   Under that ERIP, a teacher who retired at the age of fifty-five (55) would receive the full benefit, while a teacher who retired at the age of fifty-six (56) would receive a lesser benefit, and so on.   The Court concluded that, because the ERIP in question "calculated the percentage of accumulated disability leave a retiree could receive based entirely on the retiree's age," it was facially discriminatory, and therefore, was sufficient to establish a prima facie violation of the ADEA.   Id., at 1092, citing International Union v. Johnson Controls, Inc., 499 U.S. 187, 199 (1991); see Title 29 U.S.C. 623(a)(1)(prohibiting an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.").

In so holding, the Court found the defendant's argument, that the plaintiffs had failed to show an improper motive, was unavailing since "[a]ny allegedly benign intent

behind the facial age discrimination of the ERIP does 'not alter the intentionally discriminatory character of the policy.'"   Id., quoting International Union v. Johnson Controls, Inc., supra at 199.   After concluding that the ERIP was facially violative of the ADEA, and that the defendant's asserted affirmative defenses failed as a matter of law, the Court granted the plaintiffs' Motion for Summary Judgment, as to the defendant's liability under the ADEA.

As in Overlie, the ERIP, which is at issue here, computed the percentage of the benefit, that is received by the retiring teacher, based solely on his or her age, and was, therefore, facially violative of the ADEA.   However, the Pine River District has affirmatively pled the defenses of equitable estoppel and laches, and now asserts that the application of those defenses precludes a finding of liability, under the ADEA, for the operation of its ERIP.   Additionally, the School District has urged that the severability of the ERIP provisions means that the remainder of the CBA may stand.[2]

---

[2]Aside from laches and equitable estoppel, the Pine River District has also pled a number of other "affirmative defenses," including:  1) that the EEOC has failed to state a claim upon which relief can be granted; 2) that the EEOC failed to join Education Minnesota, and the Pine River-Backus Educational Association, as indispensable parties; 3) that the Pine River District was not the cause of the alleged injury; 4) that service of process may have been insufficient; 5) that the Pine River District was entirely compliant with the ADEA; 6) that the EEOC failed to exhaust the available

(continued...)

1.    <u>Fundamental Fairness, Laches</u>.  Both parties agree that the EEOC is not restricted in its enforcement of the ADEA by any explicit statute of limitations. Nevertheless, the School District asserts that the action is time barred by the EEOC's delay in commencing the suit.  Specifically, the Pine River District contends that the fifty-one (51) month delay, between the filing of the original charge in June of 2000, and the commencement of the lawsuit in September of 2004, invokes the doctrine of laches so as to protect the District from having to defend against a stale claim.

"Laches is an affirmative defense, and the burden of persuasion generally rests with the defendant."  <u>Whitfield v. Anheuser-Busch, Inc.</u>, 820 F.2d 243, 244 (8th Cir.

---

[2](...continued)
administrative remedies, or other pre-litigation protocol; 7) that the EEOC lacks standing to bring the suit; 8) that the Pine River District is immune from prosecution; 9) and that the ADEA is unconstitutional.

Aside from the Constitutional argument, which comprises the basis for its Motion to Dismiss, the Pine River District has not demonstrated any genuine dispute concerning any of these defenses, or provided any argument that their operation would serve as a limitation on its liability under the ADEA.  Accordingly, having found that the School District's ERIP was facially discriminatory, and that the ADEA was a valid exercise of Congress's authority under the Commerce Clause, we conclude that the School District has failed to establish the viability of any of these affirmative defenses, as a limitation on its liability under the ADEA.  Nevertheless, in the interests of completeness, we will briefly address, in the text of this Report, the threshold matter of standing, as well as the Plaintiff's alleged failure to join an indispensable party.

1987).  As interpreted by our Court of Appeals, two criteria must be satisfied, in order to apply the doctrine of laches:  1) an inordinate EEOC delay in filing a suit, which results in 2) undue prejudice to the defendant.  Brown-Mitchell v. Kansas City Power & Light Co., 257 F.3d 825, 826 (8th Cir. 2001), citing Whitfield v. Anheuser-Busch, Inc., supra at 244-245; EEOC v. Liberty Loan Corp., 584 F.2d 853, 857 (8th Cir. 1978).  Setting aside the delay, which the EEOC has conceded, but solely for the purposes of its Motion, the District "must establish with such clarity as to leave no room for controversy that it has been substantially and unduly prejudiced in its ability to defend the lawsuit because of the EEOC's delay."  EEOC v. North Central Airlines, 475 F. Supp. 667, 671 (D. Minn. 1979), quoting EEOC v. Liberty Loan Corp., supra at 857.

Here, the Pine River District contends that it was prejudiced by the delay because of the resultant strain on its budgetary responsibilities, and because the EEOC's suit seeks to recover damages for affected individuals who did not file individual charges.  The fatal defect in such an argument, however, is that it bears no relationship to the District's ability to defend itself against the EEOC's lawsuit.  As a

- 19 -

result of the Pine River District's failure to demonstrate any actual prejudice,[3] such as

evidence having been lost, or the fading of witnesses' recall, that would inherently

affect the District's ability to defend itself in this action, the doctrine of laches cannot

shield the District from liability under the ADEA.

        2.    <u>Equitable Estoppel</u>.  "[T]he Supreme Court has repeatedly said that

equitable estoppel will rarely work against the government."  <u>United States v. Grap</u>,

368 F.3d 824, 831 (8th Cir. 2004), quoting <u>Conforti v. United States</u>, 74 F.3d 838, 841

(8th Cir. 1996), cert. denied 519 U.S. 807, (1996); see <u>Heckler v. Community Services

of Crawford County, Inc.</u>, 467 U.S. 51, 60 (1984)("[I]t is well settled that the

Government may not be estopped on the same terms as any other litigant.").  "To

establish a claim of equitable estoppel [against the government], [a defendant] must

prove:  1) false representation by the government; 2) the government had the intent to

induce the claimant to act on the misrepresentation; 3) 'the claimant's lack of

knowledge or inability to obtain the true facts'; and 4) the claimant's reliance on the

---

[3]At the Hearing, the School District represented that certain evidence related to the Plaintiff's case against the Owatonna School District had either been lost or destroyed. As previously stated, the Plaintiff's Motion applies solely to the Pine River-Backus School District and, as a result, such a representation has no bearing on whether the School District's laches defense is sufficient to defeat the Plaintiff's Motion.

misrepresentation to her detriment." <u>Varela v. Ashcroft</u>, 368 F.3d 864, 866 (8th Cir. 2004). Since the School Districts are attempting to invoke equitable estoppel against the EEOC -- that is, a governmental agency -- as opposed to a private party, it "must first prove the government committed 'affirmative misconduct.'" <u>Id.</u>

The Pine River District has alleged that the EEOC committed affirmative misconduct by making representations that it would not seek enforcement of the alleged ADEA violation, if the District revised its CBA to eliminate the discriminatory nature of the ERIP. <u>Amended Answer</u>, at ¶24. As an initial matter, the Pine River District has provided no affirmative evidence, by Affidavit or otherwise, which demonstrates that such representations were ever made. In fact, the communications, which do appear in the Record, suggest that the EEOC provided the District with a proposed conciliation plan, which was rejected by the District causing the EEOC to advise the District that it was referring the charges for litigation. Furthermore, even if the alleged representations were made, they would not satisfy the District's "heavy burden" of establishing "affirmative misconduct." See, <u>Morgan v. C.I.R.</u>, 345 F.3d 563, 567 (8th Cir. 2003)(finding the failure of a Revenue Officer, with the Internal Revenue Service, to correct a taxpayer's misunderstanding as to the effect of an installation agreement did not amount to affirmative misconduct). As a result, the Pine

River District's affirmative defense of equitable estoppel fails, as a matter of law, and cannot preclude the District's potential liability under the ADEA.[4]

        3.    <u>Severability</u>.  The CBA at issue contained a severance clause, which provided as follows:

> Severability: The provisions of this Agreement shall be severable, and if any provision thereof or the application of any provision under any circumstances is held illegal, it shall not effect any other provision of this Agreement or the application of any provision thereof.

<u>Vasichek Decl.</u>, Exh. 1, at p. 15.

Notably, the language is nearly identical to the severance clause contained in the CBA that was construed in <u>Overlie v. Owatonna Independent School District No. 761</u>, supra at 1094. While the defendant, in <u>Overlie</u>, urged that the application of a severance clause would result in the retiring teachers receiving no benefits under the ERIP, the Court found the argument to be unpersuasive, and instead, held that the severance

---

[4]While the absence of "affirmative conduct" is dispositive of the District's equitable estoppel defense, we also find that the District's assertion, that it relied upon the EEOC's alleged representations in fulfilling its budgetary responsibilities, insufficient to support a equitable estoppel defense. Notably, while the District may very well be adversely impacted by a Judgment against it in this matter, such a fact does not require that the EEOC to forfeit a cause of action under the doctrine of equitable estoppel. See, <u>Heckler v. Community Health Services of Crawford County, Inc.</u>, 467 U.S. 51, 62 (1984).

clause was insufficient to satisfy the waiver requirements of Title 29 U.S.C. §626(f). Id.; citing <u>Oubre v. Entergy Operations, Inc.</u>, 522 U.S. 422, 427 (1998).  Following <u>Overlie</u>, the severance clause here is also insufficient to absolve the  District of any liability under the ADEA.

        4.    <u>The Failure to Join an Indispensable Party</u>.  Rule 19, Federal Rules of Civil Procedure, requires the joining of an  indispensable party if "(1) in the [party's] absence complete relief cannot be accorded among those already parties, or (2) the [party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in that [party's] absence may (i) as a practical matter impair or impede the [party's] ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  As reflected in <u>Overlie</u>, a union need not be joined in an action such as this one, since those persons who were affected by the discriminatory provision of the ERIP can obtain relief absent the joinder.  See, <u>Overlie v. Owatonna Independent School District No. 761</u>, supra at 1090 (holding that a school district does not have a right to contribution from a union under the ADEA for a facially discriminatory ERIP that was contained in CBA negotiated with the union); see also, <u>DeLoach v. Infinity Broadcasting</u>, 1998 WL

- 23 -

70593 at *5 (N.D. Ill., February 12, 1998)(finding that the union which negotiated a CBA was not an indispensable party to an action brought by an employee against the employer, under the ADEA, where the employer acted in accordance with the CBA); Boczon v. Northwest Elevator Co., Inc., 652 F. Supp. 1482, 1486-1487 (E.D. Wis. 1987)(same). Accordingly, the EEOC's failure to name Education Minnesota, and the Pine River-Backus Education Association, as parties to the action, cannot preclude the School District's liability under the ADEA.

5.    Standing.  The individual teachers, who were affected by the Pine River District's ERIP, unquestionably have standing to bring an action against the District under the ADEA. See, Overlie v. Owatonna Independent School District No. 761, supra at 1087. Further, the EEOC has independent authority to bring suits, so as to enforce the provisions of the ADEA, on behalf of the individual employees who are affected by discrimination. See, Title 29 U.S.C. §626. As a consequence, the District's standing argument is wholly without merit.

Having found that the Pine River District's ERIP violated the ADEA, as a matter of law, and that none of the District's affirmative defenses are legally sufficient to absolve the District of liability, under the ADEA, we recommend that the EEOC's Motion for Partial Summary Judgment be granted.

C.   The Third Party Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.

1.   Standard of Review.   In reviewing a Complaint, under Rule 12(b)(6), Federal Rules of Civil Procedure, we consider all of the facts alleged in the Complaint as true, and construe the pleadings in a light most favorable to the plaintiff. See, e.g., Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe Railroad, 270 F.3d 637, 6388 (8th Cir. 2001).   "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."   Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."   Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).   "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

2.    Legal Analysis.   The School Districts have alleged that, in the event that they are found liable under the ADEA, for the ERIPs contained in the individual CBAs, they are entitled to contribution or indemnity from the Education Associations, as a result of the Associations' involvement in the negotiation of the CBAs at issue. The same precise issue was addressed in Overlie, where the defendant school district responded to the ADEA charge against it by filing a Third-Party claim for contribution against the union that was involved in negotiating the CBA which contained the ERIP in question. Overlie v. Owatonna Independent School District No. 761, supra at 1088. Upon the union's Motion, the Court dismissed the Third-Party Complaint, after concluding that the ADEA did not afford the school district with a right to contribution from the union. Id. at 1089, and 1094.

Apart from Overlie, there appears to be a dearth of authority on the question of contribution under the ADEA. We have closely reviewed the Court's analysis in Overlie, and find its reasoning persuasive. The result reached, in Overlie, considered the statutory language of the ADEA, the absence of any pertinent legislative history, the purpose and structure of the ADEA, and the principles of Federal common law.

- 26 -

Moreover, the Court analyzed the closest Supreme Court precedents, arising from both Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985), and Northwest Airlines, Inc. v. Transp. Workers Union of Am., 451 U.S. 77 (1981), where the Court analyzed the analogous provisions of the Equal Pay Act, and Title VII, and concluded that there is no right to contribution, by an employer.  Faced with directly contrary authority, on the contribution question, from within this District, the School Districts seek to distinguish the circumstances in Overlie from those presented here.

Specifically, the School Districts argue that, in Overlie, the plaintiffs were private individuals while, here, the Plaintiff is the EEOC.  Further, the School Districts content that Overlie should be inapposite since the School Districts have alleged that the Education Associations engaged in a collective effort, along with the Districts, in negotiating the respective CBAs.  As a result, the School Districts maintain that the Education Associations are equitably estopped from opposing the School Districts' right to contribution, since the Associations negotiated a settlement with the EEOC which was not fully disclosed to the Districts, and which insulated the Associations for liability, under the ADEA, as to the ERIPs in dispute.

Unfortunately for the School District's argument, the alleged distinctions between this case, and Overlie, are inconsequential to the legal issue presented, and

therefore, they do not counsel a different outcome.  Specifically, the factual allegations contained in the Third-Party Complaint do not allege any affirmative misconduct on the part of the Education Associations,[5] other than the School Districts' bald self-proclamation that their own "liability is only secondary, passive, indirect or vicarious, whereas Education Minnesota was guilty of unlawful conduct, which was the actual, direct, and primary cause of the alleged damages, so that the [School Districts are] entitled to indemnity or contribution from Education Minnesota."   Third Party Complaints, at ¶¶7, 10.

As to the equitable estoppel claim, even if we overlook the fact it was not pled as to the Education Associations, we find the contention meritless.  According to the School Districts, the Education Associations should be equitably estopped from arguing against their liability for contribution since the Associations entered into a Conciliation Agreement with the EEOC, on July 9, 2001, which absolved them from prosecution, by the EEOC, in exchange for certain specified conditions.  The School Districts complain that the negotiations, between the Associations and the EEOC, were

---

[5]While it is extraneous to the legal issue we resolve, we do note that all of the allegations contained in the Third-Party Complaints simply refer to Education Minnesota, as there is no mention, in any of those Complaints, which directly implicate the local unions who are named as Defendants.

- 28 -

veiled in secrecy, and that the Districts were prejudiced, by that "misleading silence."

School Districts' Memorandum of Law in Opposition to Education Associations'

Motion to Dismiss, at p. 6.   Even if the School Districts felt that they had been

wronged, when the EEOC released the Educational Associations from liability under

the ADEA, we see no recognizable basis for invoking equitable estoppel, as against

the Associations, for their successful effort to secure immunity from suit.[6]

_____

[6]As was the case in Overlie v. Owatonna Independent School District No. 761, 341
F. Supp.2d 1081, 1088 (D. Minn. 2004), we need not decide whether the Education
Associations would be liable to the EEOC, "because (1) [the EEOC has] not brought
a claim against the [Education Associations], and (2) the [School Districts] cannot
assert any right of [the EEOC] to do so."   Citing Trans World Airlines, Inc. v.
Thurston, 469 U.S. 111, 119 n. 14 (1985), for the proposition that "'an employer
'cannot assert the right of [employees] to recover damages against the Union' for
ADEA violations."   The Court, in Overlie, went on to explain as follows:

> Furthermore, any right [the EEOC has] to recover from the
> [Education Associations] does not establish the District[s']
> right to contribution.   See Northwest Airlines, Inc. v.
> Transp. Workers Union of Am., 451 U.S. 77, 88-89, 101
> S.Ct. 1571, 67 L.Ed.2d 750 (1981)(plaintiff's right to
> recover from union under Equal Pay Act or Title VII does
> not establish employer's right to contribution).   Therefore,
> the ADEA must support a separate right to contribution for
> the District to maintain its claim against the Union.

Id.

The very same reasoning applies here.

- 29 -

We understand, as the School Districts emphasize, that the EEOC, on occasion, characterized the liability of the School Districts, and the Education Associations, as joint and several, but such a characterization was the EEOC's and not the Education Associations'.  See <u>Affidavit of James K. Martin</u>, Exh. 1, at p. 4.  As for "misleading silence," by its own Affidavit, the School Districts disclose that they were aware of the purportedly secret negotiations, between the Education Associations, and the EEOC, nearly ten (10) months before the Conciliation Agreement, between the Associations and the EEOC was consummated.[7]   The most we can discern from the Districts' equitable estoppel argument is a not-so-subtle instance of "sour grapes" that the Districts had not been as successful in reaching an accord with the EEOC as were the Education Associations.  Notably, the School Districts cite no cases, involving even remotely similar circumstances, in which equitable estoppel has been properly invoked,

---

[7]We cite to the Affidavit, that was proffered by the School Districts, not to transform the Motion to Dismiss into a Motion for Summary Judgment, but in the interests of avoiding any contention that the Education Associations' entitlement to dismissal is the product of a technical deficiency in pleading.  We have reviewed the arguments as to equitable estoppel and, for reasons we detail in this Report, we find no legitimate basis to invoke that doctrine, against the Associations, even if that affirmative defense had been fully pled.

much less in creating a contribution right of action that is not otherwise recognized in the governing law.

Since, as a matter of law, the School Districts do not have a right of contribution against the Education Associations under the ADEA, as to provisions in a CBA that are claimed to be age discriminatory, the allegations contained in the Third-Party Complaints are insufficient to state a claim against the Education Associations. Therefore, we recommend that the Motion to Dismiss by the Education Associations be granted.

NOW, THEREFORE, It is –

RECOMMENDED:

1.      That the Defendants'/Third-Party Plaintiffs' Motion for Summary Judgment [04-4087, Docket No. 9; 04-4088, Docket No. 47; 04-4090, Docket No. 45; 04-4091, Docket No. 46; 04-4092, Docket No. 52; 04-4093, Docket No. 46] be denied.

2.      That the Plaintiff's Motion for Partial Summary Judgment [04-4087, Docket No. 43] be granted.

3      That the Third-Party Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [04-4087, Docket No. 39; 04-4088, Docket No.

18; 04-4090, Docket No. 15; 04-4091, Docket No. 17; 04-4092, Docket No. 23; 04-4093, Docket No. 17] be granted, and the Third-Party Complaints be dismissed with prejudice.

Dated:  June 1, 2005                    s/Raymond L. Erickson
                                        Raymond L. Erickson
                                        UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 17, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 17, 2005,** unless all interested parties

- 32 -

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.